J-A18007-21

2021 PA Super 252

| | | |
|---|---|---|
| DAVID KLAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DAIRY FARMERS OF AMERICA, INC., | : | No. 1280 WDA 2020 |
| A CORPORATION, AND ROGER J. | : | |
| WILLIAMS, AN INDIVIDUAL | : | |

Appeal from the Order Entered October 4, 2017
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 2015-10863

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

OPINION BY OLSON, J.: **FILED: DECEMBER 17, 2021**

Appellant, David Klar, appeals from the order entered on October 4, 2017, which granted the motion for judgment on the pleadings filed by Dairy Farmers of America, Inc. ("DFA") and dismissed Appellant's claims against DFA. We affirm.

Appellant filed a complaint against DFA and Roger J. Williams ("Williams"), wherein he alleged and averred the following. On August 17, 2014, DFA organized and sponsored a golf outing for its employees at Tanglewood Golf Course in Mercer County, Pennsylvania. Appellant's Complaint, 9/1/15, at ¶ 7. At the time, Williams was an employee of DFA and DFA "encouraged its employees, including Williams, to sign up for and participate in" the golf outing. *Id.* at ¶ 8. "As a prerequisite and condition for participation in the [golf outing, DFA] required [its] employees to make a

monetary contribution to offset costs and expenses related to or associated with the [outing,] including . . . those for greens fees, food and alcohol."[1] *Id.* at ¶ 9. Williams signed up for the golf outing and paid DFA the monetary contribution that was required to participate in the outing. *Id.* at ¶ 10. DFA then purchased the greens fees, food, and alcohol for the outing. *Id.* at ¶ 11.

While participating in the golf outing, "Williams consumed alcohol furnished by [DFA] sufficient to render him visibly intoxicated." *Id.* at ¶ 12. "Despite his visible intoxication, [DFA] served Williams alcohol and continued to permit Williams to consume more alcohol[,] causing his blood alcohol level to . . . [reach] 0.23, almost three times the legal limit" in Pennsylvania. *Id.* at ¶¶ 13 and 18. "Furthermore, prior to serving Williams with alcohol and encouraging and permitting Williams to consume alcohol, [DFA] knew or should have known that Williams was an alcoholic and habitual drunkard who had at least twice before been arrested or convicted of alcohol-related crimes and offenses, including [] criminal offenses involving the unsafe operation of a motor vehicle." *Id.* at ¶ 14.

Williams left the golf outing at approximately 5:45 p.m. and drove his car north along Pennsylvania State Route 18. *Id.* at ¶ 23. "At or about the same time, [Appellant] was operating [his motorcycle] . . . in the southbound lane of" Route 18. *Id.* at ¶ 24. As the vehicles approached one another,

---

[1] On appeal, Appellant avers that DFA provided beer to Williams. *See* Appellant's Brief at 22 ("DFA sold, provided and gave Williams beer").

- 2 -

Williams "suddenly and without warning[] failed to control his motor vehicle and caused [his] vehicle to swerve left of the center line into the southbound lane of [Route] 18 into the path of [Appellant's motorcycle,] causing a collision between the" two vehicles and causing Appellant to sustain multiple serious and permanent injuries. *Id.* at ¶¶ 25-31.

Appellant claimed that DFA and Williams were jointly and severally liable for his injuries. Further, as to DFA, Appellant claimed that DFA was liable because it "furnish[ed], serv[ed,] and provid[ed] Williams alcohol when [DFA] knew or should have known Williams was visibly intoxicated and/or a habitual drunkard." *Id.* at ¶ 33.

DFA answered the complaint and denied that it was liable for Appellant's injuries. **See** DFA's Amended Answer, New Matter, and Crossclaims, 5/5/16, at 1-18.

On June 16, 2017, DFA filed a motion for judgment on the pleadings. Within its motion, DFA argued that, as a matter of law, it could not be liable to Appellant because: 1) it does not qualify as a "licensee" under Pennsylvania's Liquor Code;[2] 2) it "did not obtain 'licensee status' and cannot be treated as a licensee under the Liquor Code for purposes of Dram Shop liability;" and 3) it was a social host and "there can be no liability on the part of a social host who serves alcoholic beverages to [their] adult guest." DFA's

---

[2] 47 P.S. §§ 1-101 – 10-1001.

Motion for Judgment on the Pleadings, 6/16/17, at ¶¶ 17-22; DFA's Brief in Support of Motion for Judgment on the Pleadings, 6/16/17, at 4.

On October 4, 2017, the trial court granted DFA's motion for judgment on the pleadings and dismissed all claims against DFA with prejudice. Within the trial court's opinion, it explained that DFA was entitled to relief because:

> For negligence *per se* under the Dram Shop Act, [Appellant] bears the burden of showing [DFA] is either a licensee, or stepped into the shoes of a licensee. [Williams'] payment of a fee in this case to [defray] the cost of the golf outing as a whole, with alcohol being only an incidental aspect of the fee which also provided for food and the golfing itself, without profit or other indicia of commercial sale of liquor, does not satisfy the burden of [Appellant] to meet all the elements of its cause of action. Particularly, the pleadings of this case fail to establish DFA stepped into the shoes of a licensee. For these reasons, [Appellant] has failed to state a cause of action.

Trial Court Opinion, 10/4/17, at 11.

Appellant eventually settled his claim against the remaining defendant, Williams, and, on November 6, 2020, Appellant filed a *praecipe* to discontinue his remaining claims against Williams.[3] On November 24, 2020, Appellant

_____

[3] We have explained:

> It is well settled that the interlocutory orders dismissing various parties piecemeal from a lawsuit may not be appealed until the case is concluded as to the final remaining party and the case is therefore resolved as to all parties and all claims. [*See* Pa.R.A.P. 341(b)(1).] . . . [A] case may be resolved against the final defendant by other than an order of court, as happens where the case against the sole remaining defendant is discontinued or settled, and a docket entry to the effect that the claim was

*(Footnote Continued Next Page)*

- 4 -

filed a timely notice of appeal challenging the trial court's October 4, 2017 order, which granted DFA's motion for judgment on the pleadings. Appellant raises two claims on appeal:

> [1.] Whether an unlicensed company-employer who provides an uncontrolled amount of alcohol to a visibly intoxicated employee in exchange for remuneration is liable to a third-party who sustains personal injuries as a result of the actions of the intoxicated employee?
>
> [2.] Whether an unlicensed company-employer who provides an uncontrolled amount of alcohol to a visibly intoxicated employee, in exchange for remuneration, may be considered a "social host," despite the fact that it does not sell alcohol as a going concern operating on commercial principles and the alcohol was presumably furnished without profit or other indicia of commercial sale?

Appellant's Brief at 4.

Before considering Appellant's claims, we must first address DFA's contention that we do not have jurisdiction over this appeal, as it is untimely. *See* DFA's Brief at 24. Our analysis of DFA's jurisdictional claim requires that we recount certain additional facts of this case.

As noted above, on October 4, 2017, the trial court granted DFA's motion for judgment on the pleadings and dismissed all claims against DFA. At the time, Appellant's claims against defendant Williams were still outstanding; thus, the trial court's October 4, 2017 order was interlocutory

---

discontinued or settled may serve to render the prior [orders] final and appealable.

*Burkey v. CCX, Inc.*, 106 A.3d 736, 738-739 (Pa. Super. 2014).

and unappealable. **See** Pa.R.A.P. 341(b)(1) (declaring that, generally, a final order is one that "disposes of all claims and of all parties"); **see also Brickman Group, Ltd. v. CGU Ins. Co.**, 829 A.2d 1160 (Pa. Super. 2003) (a grant of summary judgment to some, but not all, defendants is not a final, appealable order).

After the trial court entered its October 4, 2017 order and dismissed Appellant's claims against DFA, Appellant filed a motion for reconsideration of the interlocutory, October 4, 2017 order. Among other things, Appellant requested that the trial court amend the October 4, 2017 order "to include the requisite language contained in 42 [Pa.C.S.A.] § 702(b) to permit an interlocutory appeal by permission to the Pennsylvania Superior Court." **See** Appellant's Motion for Reconsideration, 10/31/17, at 21. Section 702(b), entitled "interlocutory appeals by permission," declares:

> **Interlocutory appeals by permission.**--When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order **involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter**, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S.A. § 702(b) (emphasis added); **but see F.D.P. v. Ferrara**, 804 A.2d 1221, 1226-1227 (Pa. Super. 2002) (explaining that an interlocutory appeal by permission was an inappropriate vehicle for immediately appealing

an order that dismissed some, but not all, parties and claims; in such cases, the litigant must instead follow Pennsylvania Rule of Appellate Procedure 341(c), as Rule 341(c)'s procedure "was designed to allow for an immediate appeal of a 'final' order relating to less than all parties or less than all claims").

On October 31, 2017, the trial court acceded to Appellant's request and amended its October 4, 2017 order to include the Section 702(b) language. The trial court's October 31, 2017 order reads:

> it is hereby ordered that [the trial court] amends its order dated and entered October 4, 2017, to include the following statement prescribed by 42 [Pa.C.S.A.] § 702(b):
>
> "It is the opinion of this court that the within order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this matter."

Trial Court Order, 10/31/17, at 1 (some capitalization omitted). On November 29, 2017, Appellant filed, in this Court, a petition for permission to appeal the amended, October 2017 order.

DFA answered Appellant's petition and observed that the trial court's addition of Section 702(b)'s language was insufficient to certify the interlocutory, October 2017 order as a final order. *See* DFA's Answer to Petition for Permission to Appeal, 12/14/17, at 4-5. DFA noted that the interlocutory, October 2017 order could have only been certified as a final order if the trial court included the language mandated by Pennsylvania Rule of Appellate Procedure 341(c). *See id.* Rule 341(c) declares:

- 7 -

> **Determination of finality.**--When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties **only upon an express determination that an immediate appeal would facilitate resolution of the entire case**. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

Pa.R.A.P. 341(c) (emphasis added). As DFA observed, Appellant "did not seek certification of the [October 2017] order pursuant to Rule 341(c) and . . . the October 2017 order was not properly certified pursuant to [Rule] 341(c)." DFA's Answer to Petition for Permission to Appeal, 12/14/17, at 8.

DFA further noted that the trial court's inclusion of Section 702(b)'s language was simply the first step in obtaining an interlocutory appeal by permission – and, at any rate, an interlocutory appeal by permission was improper in this case. *See id.*; *see also F.D.P.*, 804 A.2d at 1226-1227.

On December 4, 2017, this Court denied Appellant's petition for permission to appeal the interlocutory, October 2017 order. *See* Order, 12/14/17, at 1.

Currently before this Court, DFA argues that we lack jurisdiction to consider the instant appeal because Appellant filed an untimely notice of appeal. Specifically, DFA argues that the trial court's October 31, 2017 amendment – which included Section 702(b)'s language and presumptively allowed for an interlocutory appeal by permission – "create[d] a final order,

[which was] immediately appealable under Pa.R.A.P. 341(c)." DFA's Brief at 25. According to DFA, since Appellant did not file his notice of appeal within 30 days of October 31, 2017, the current appeal is untimely and we lack jurisdiction to consider the merits of this appeal. *See id.*

DFA's current argument stands in direct conflict with its earlier, successfully maintained position that the trial court's October 31, 2017 amendment did not create a final order, as the trial court failed to include Rule 341(c)'s mandatory language. *See* DFA's Answer to Petition for Permission to Appeal, 12/14/17, at 8-10. Moreover, under the plain statutory language, DFA's current argument is simply incorrect. The trial court's October 31, 2017 amendment did not transform the interlocutory, October 2017 order into a final order, as the trial court did not include the language required by Rule 341(c). Indeed, by including the language of Section 702(b), the trial court maintained the interlocutory nature of the October 2017 order. This is made clear, first, by the fact that Section 702(b) is entitled "**interlocutory appeals by permission**" and, second, by the fact that Section 702(b) **expressly states** that the inclusion of Section 702(b)'s language maintains the interlocutory nature of the order. *See* 42 Pa.C.S.A. § 702(b) (declaring that, if the trial court properly includes the language in Section 702(b) and certifies an interlocutory order as appealable by permission, "[t]he appellate court may thereupon, in its discretion, permit an appeal to be taken **from such interlocutory order**") (emphasis added). Thus, when the trial court amended its October 2017 order to include the language from Section 702(b),

the trial court did not create a final order and DFA's claim that we lack jurisdiction over this appeal is meritless. We therefore shall proceed to the merits of Appellant's contentions.

Appellant claims that the trial court erred when it granted DFA's motion for judgment on the pleadings. "Our standard of review over a decision sustaining a judgment on the pleadings requires us to determine whether, on the facts averred, the law makes recovery impossible." *Cagey v. Commonwealth*, 179 A.3d 458, 463 (Pa. 2018). The Pennsylvania Supreme Court has explained:

> the same principles apply to a judgment on the pleadings as apply to a preliminary objection in the nature of a demurrer:
>
> All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Id.* at 463 n.2 (quotation marks and citations omitted).

Within Appellant's complaint, Appellant alleges that DFA is liable for the harm done to him, as DFA furnished alcohol to Williams for consideration, while Williams was visibly intoxicated. Appellant concedes that DFA was not licensed under the Liquor Code and that DFA could not have obtained a license, under the Liquor Code, for the golf outing. *See* Appellant's Brief at 21 ("[i]t is conceded that DFA is not an 'eligible entity' that could have obtained a license for the [golf outing] and that DFA was not otherwise licensed").

- 10 -

Nevertheless, Appellant claims that DFA is still liable for his injuries because: 1) DFA is negligent *per se*, as it violated the standard set forth in 47 P.S. § 4-493(1) by furnishing alcohol to Williams while he was visibly intoxicated; 2) DFA illegally sold alcohol to Williams and thus has "licensee status," where it "assumes the same liability exposure as those who are licensed and furnish alcohol to those it should not;" and, 3) DFA otherwise breached its common law duty when it provided alcohol to Williams when he was already intoxicated. We will address Appellant's claims in the order listed above.

First, we address Appellant's claim that the trial court erred when it granted DFA's motion for judgment on the pleadings because DFA violated the standard set forth in 47 P.S. § 4-493(1) and is negligent *per se*.

Section 4-493 is entitled "Unlawful acts relative to liquor, malt and brewed beverages and licensees." At all relevant times, Section 4-493(1) has declared:

> **§ 4-493. Unlawful acts relative to liquor, malt and brewed beverages and licensees**
>
> The term "licensee," when used in this section, shall mean those persons licensed under the provisions of Article IV, unless the context clearly indicates otherwise.
>
> **It shall be unlawful--**
>
> **(1) Furnishing liquor or malt or brewed beverages to certain persons.** For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor: Provided further,

- 11 -

That notwithstanding any other provision of law, no cause of action will exist against a licensee or the board or any employe, servant or agent of such licensee or the board for selling, furnishing or giving any liquor or malt or brewed beverages or permitting any liquor or malt or brewed beverages to be sold, furnished or given to any insane person, any habitual drunkard or person of known intemperate habits unless the person sold, furnished or given alcohol is visibly intoxicated or is a minor.

47 P.S. § 4-493(1).

Appellant claims that, although Section 4-493(1) is a penal statute, it establishes a standard of conduct for entities such as DFA, as DFA falls within Section 4-493(1)'s stated category of "any other person." According to Appellant, since DFA is bound by Section 4-493(1)'s standard, DFA was negligent *per se* and violated the standard set forth by the statute when it "sold, furnished or g[ave]" beer to Williams while he was visibly intoxicated. This claim fails.

As we have explained:

Generally, to prevail in a negligence case, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff.

The concept of negligence *per se* establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm. . . .

In order to prove a claim based on negligence *per se*, the following four requirements must be met:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
>
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
>
> (3) The defendant must violate the statute or regulation;
>
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Schemberg v. Smicherko*, 85 A.3d 1071, 1073-1074 (Pa. Super. 2014) (quotation marks and citations omitted).

In relevant part, Section 4-493(1) makes it unlawful:

> For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor.

47 P.S. § 4-493(1).

Appellant concedes that DFA is not a "licensee or the board, or any employe, servant or agent of such licensee or of the board." *See* Appellant's Brief at 20. Nevertheless, Appellant claims that DFA falls within Section 4-493(1)'s category of "any other person" – and that DFA is negligent *per se*, as it "sold, furnished or g[ave]" beer to Williams when he was visibly intoxicated. Respectfully, we disagree and, for the reasons that follow, we conclude that Section 4-493(1) does not apply to DFA, as DFA is a non-licensee under the Liquor Code. Thus, Appellant's claim fails.

Appellant cites this Court's 1957 opinion in **_Commonwealth v. Randall_**, 133 A.2d 276 (Pa. Super. 1957), as holding that a non-licensee (such as DFA) falls within Section 4-493(1)'s category of "any other person." **_See_** Appellant's Brief at 17. We agree with Appellant's interpretation of **_Randall_**; however, we observe that, in the civil context, our Supreme Court did not follow **_Randall_** in its subsequent opinion in **_Manning v. Andy_**, 310 A.2d 75 (Pa. 1973) – and, in **_Manning_**, our Supreme Court held that the statutory phrase "any other person" did not encompass non-licensees.

In **_Randall_**, "a party was held in defendant Randall's home, in the course of which some of the six minor children, whose ages ranged from 12 to 17 years, were served beer, whiskey and vodka." **_Randall_**, 133 A.2d at 279. The defendant was charged with and convicted of violating the criminal statute of 47 P.S. § 4-493(1). At the time, the statute declared:

> It shall be unlawful (1) For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits.

**_Id._** at 277, _quoting_ 47 P.S. § 4-493(1) (1951).

On appeal, the defendant argued "that under the _ejusdem generis_ rule, the words 'any other person' refer to persons in the same class as those enumerated, _i.e._, licensees or board or any employe, servant or agent of licensee or the board." **_Randall_**, 133 A.2d at 281. According to the defendant

in *Randall*, since he was a non-licensee and did not fall within any of the specified classes, he could not be convicted of violating Section 4-493(1). *Id.* We rejected this claim and held:

> We think that the legislature in using the words 'or any other person' deliberately selected these words in order to prohibit minors, visibly intoxicated persons, insane persons, habitual drunkards, and persons of known intemperate habits, from obtaining liquor, malt or brewed beverages, whether by purchase or gift, from licensees or any other persons. The intention of the legislature to protect the classes of persons named is the underlying consideration. If we were to restrict this section of the Act to 'licensees' or their 'servants, agents or employes,' we would nullify the very purpose of the Act.

*Id.* at 282 (some quotation marks omitted).

In contrast to *Randall*, *Manning* was a civil case. In *Manning*, the plaintiff filed a complaint, sounding in negligence, against his defendant-employers. He alleged that he and a fellow-employee, named Walters, had been at a company party, where the defendant-employers "did furnish or supply intoxicating liquors or beverages which were consumed by [Walters] . . . and did continue to furnish intoxicating liquors or beverages to [Walters] when he was in a state of visible intoxication." *Manning*, 310 A.2d at 75. The plaintiff claimed that, after he and Walters left the party, he sustained injuries "in an automobile accident caused by [Walters], who was under the influence of liquor." *Id.*

The defendant-employers filed a preliminary objection in the nature of a demurrer and argued that the complaint did not state a viable cause of action. *See Manning v. Andy*, 51 Pa. D. & C.2d 324 (Ct. Com. Pl. 1970). In

response, the plaintiff filed a petition to amend his complaint to allege that the defendant-employers were negligent *per se* for violating 47 P.S. § 4-493(1). At the time, the statute provided:

> it shall be unlawful for any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given to any person visibly intoxicated, or to any insane person, or to any minor or to habitual drunkards or persons of known intemperate habits.

*Id.* at 325, *quoting* 47 P.S. § 4-493(1) (1951).

The trial court explained the legal theory which motivated the plaintiff to amend his complaint:

> While defendants were not licensees, plaintiff seeks to establish by his proposed amendment that they fall within the clause "or any other person" and thus that [defendants] violated a law of the Commonwealth when they gave liquor to a visibly intoxicated person. This would be sufficient to impute negligent conduct to defendants and thus, according to plaintiff's argument, his complaint would state a cause of action.

*Manning*, 51 Pa. D. & C.2d at 325-326.

The trial court permitted the amendment, but still sustained the defendant-employers' preliminary objection in the nature of a demurrer. **See id.** at 327; **see also Manning**, 310 A.2d at 76 n.1.

In analyzing the defendant-employers' preliminary objection, the trial court observed that the question before it was whether "the Liquor Code, when it prohibits ['any person'] from giving liquor to a visibly intoxicated person,

refer[s] to the host at a Christmas party or does it refer only to people engaged in the liquor business?" ***Manning***, 51 Pa. D. & C.2d at 327-328. The trial court recognized that ***Randall*** answered the question in the criminal context, as ***Randall*** "defined 'any other person' to encompass private citizens for purposes of criminal enforcement." ***Id.*** at 330. Nevertheless, the trial court professed "great difficulty in extending the act to impose civil liability on private citizens who serve liquor to their guests." ***Id.*** Further, the trial court concluded that the legislature did not intend for such a broad, civil application of Section 4-493(1). The trial court thus sustained the defendant-employers' preliminary objection and dismissed the plaintiff's complaint. ***Id.*** at 331.

The plaintiff appealed to the Pennsylvania Supreme Court. The Supreme Court affirmed the trial court and held:

> In dismissing the complaint, the trial court held that no cause of action was stated under any theory and specifically held that [Section] 493(1) of the Liquor Code, . . . which defines certain unlawful conduct, does not impose civil liability upon [the defendant-employers].
>
> We find no error in the trial court's dismissal of [plaintiff's] complaint. Only licensed persons engaged in the Sale of intoxicants have been held to be civilly liable to injured parties. ***Jardine v. Upper Darby Lodge No. 1973***, 198 A.2d 550 (Pa. 1964). [Plaintiff] asks us to impose civil liability on nonlicensed persons like [the defendant-employers], who furnish intoxicants for no remuneration. We decline to do so. While [plaintiff's] proposal may have merit, we feel that a decision of this monumental nature is best left to the legislature.

***Manning***, 310 A.2d at 76.

*Manning* offers compelling support for the conclusion that DFA, as a non-licensee, is not subject to the standard applicable to licensees under Section 4-493(1). Like today, the version of Section 4-493(1) at issue in *Manning* made it unlawful for "any licensee or the board, or any employe, servant or agent of such licensee or of the board, **or any other person**" to "**sell, furnish or give**" "any liquor or malt or brewed beverages" "**to any person visibly intoxicated**." *Compare* 47 P.S. § 4-493(1) (1951) *with* 47 P.S. § 4-493(1) (2017). It is also important to note that the plaintiff's complaint in *Manning* specifically alleged that the defendant-employers "did continue to furnish intoxicating liquors or beverages to [Walters] when he was in a state of visible intoxication." *Manning*, 310 A.2d at 75. Finally, although the *Manning* Court observed that the liquor was provided for "no remuneration," the presence or absence of remuneration is neither relevant nor dispositive under the plain terms of Section 4-493(1): the statute clearly prohibits the selling, **furnishing, or giving** of liquor or beer "to any person visibly intoxicated." *See* 47 P.S. § 4-493(1).

Simply stated, by holding that the defendant-employers in *Manning* could not, as a matter of law, be civilly liable for violating the standard set forth in Section 4-493(1), the *Manning* Court, in fact, held that the statutory phrase "any other person" **did not encompass non-licensees**. *Manning*, 310 A.2d at 76 ("**[o]nly licensed persons** engaged in the Sale of intoxicants have been held to be civilly liable to injured parties") (emphasis added). Certainly, if "any other person" included non-licensees, the Supreme Court

- 18 -

would have been compelled to reverse the trial court's grant of a demurrer, as the plaintiff alleged that the defendant-employers "furnish[ed] intoxicating liquors or beverages to [Walters] when he was in a state of visible intoxication" – and Section 4-493(1) clearly prohibits "any other person" from "furnish[ing] or giv[ing]" liquor or beer "to any person visibly intoxicated." *See* 47 P.S. § 4-493(1) (1951). Thus, in accordance with *Manning*, Section 4-493(1)'s statutory phrase "any other person" excludes non-licensees.[4] *Manning*, 310 A.2d at 76 ("**[o]nly licensed persons** engaged in the Sale of intoxicants have been held to be civilly liable to injured parties") (emphasis added); *see also Congini by Congini v. Portersville Valve Co.*, 470 A.2d 515, 518 n.3

---

[4] To be sure, the dissent in *Manning* chastised the majority for distorting the plain meaning of the phrase "any other person" and argued that, in *Randall*, the Superior Court had correctly interpreted the phrase to include non-licensees. *See Manning*, 310 A.2d at 80 (Manderino, J., dissenting) (declaring: "[t]he reasoning of *Randall*, as to the meaning of Any other person is indisputable. . . . Only by a gross [distortion] of the meaning of language can we interpret Any other person to mean Some but not All persons"). We further note that, in *Bradshaw v. Rawlings*, 612 F.2d 135 (3rd Cir. 1979), the United States Court of Appeals for the Third Circuit specifically declared:

> We read the earlier [S]uperior [C]ourt decision of [*Commonwealth*] *v. Randall*, . . . to be inconsistent with the [S]upreme [C]ourt's subsequent decision in *Manning v. Andy*. . . . The [S]uperior [C]ourt had interpreted "or other person" in the [Liquor Code] to mean persons other than licensees, their servants or employees. Using this interpretation, a private host could be held liable under the statute for serving minors. The [S]upreme [C]ourt's pronouncement in *Manning*, however, is diametrically opposed to that of the [S]uperior [C]ourt.

*Bradshaw*, 612 F.2d at 141 n.29.

(Pa. 1983) (the Pennsylvania Supreme Court declared: "[i]n **Manning v. Andy**, . . . **we held that a violation of the Liquor Code could not form the basis for a cause of action against a non-licensee**") (emphasis added).

In the case at bar, Appellant concedes that "DFA is not an 'eligible entity' that could have obtained a license for the [golf outing] and that DFA was not otherwise licensed" under the Liquor Code. Appellant's Brief at 21. Therefore, in accordance with **Manning**, DFA cannot be civilly liable for violating the standard set forth in Section 4-493(1). Appellant's first claim on appeal thus fails.

Next, Appellant claims, DFA must be viewed as attaining "licensee status" under Section 4-493(1), as DFA "sold, provided and gave Williams beer without first obtaining a license." Appellant's Brief at 22. According to Appellant, "[s]ince DFA engaged in the very same conduct permitted by a licensee, when it was not licensed and violated the law, it should be attributed with licensee status and assume the same responsibility and liability of a licensee." **Id.**

Appellant's argument is based entirely upon **Hinebaugh v. Pennsylvania Snowseekers Snowmobile Club**, 63 Pa. D. & C.4th 140 (Ct. Com. Pl. 2003), a court of common pleas opinion. In **Hinebaugh**, the plaintiff was a member of the defendant snowmobile club. While in the defendant's clubhouse, the plaintiff purchased alcohol by using a "punch-out card." "The

amount equal to the cost of the drink was punched out when a beverage was obtained from the bar." *Id.* at 143.

After drinking alcohol in the clubhouse, the plaintiff went for a snowmobile ride, crashed into a tree, and suffered serious injuries. He sued the club and claimed that it was negligent *per se*, as it sold him alcohol while he was visibly intoxicated in violation of Section 4-493(1). *Id.* at 143-144.

The defendant club filed a motion for summary judgment and claimed that, since it was not a licensed entity under the Liquor Code, it could not be liable for violating the standard set forth in Section 4-493(1). *Id.* at 141. The trial court denied the defendant club's motion for summary judgment and held that the club had acquired "licensee status" because "[t]he prepaid punch-card system created by the defendant club constitute[d] a sale requiring the defendant club to have procured a license from the Liquor Control Board to so operate its bar." *Id.* at 147. Further, the court held that sufficient evidence existed that the plaintiff was sold, furnished, or given alcohol while he was "visibly intoxicated" to survive summary judgment. *Id.* at 148.

On appeal, Appellant claims that we should look to **Hinebaugh** and hold that DFA "step[ped] into the shoes of a licensee and assume[d] the duty to protect third parties like [Appellant] and is subject to liability for its breach." Appellant's Brief at 21. We decline to apply **Hinebaugh** to the case at bar. At the outset, we are "not bound by decisions of the Court of Common Pleas, even if directly on point." **Commonwealth v. Peak**, 230 A.3d 1220, 1227 n.6 (Pa. Super. 2020) (quotation marks and citations omitted). Further,

- 21 -

*Hinebaugh* relied upon the *Randall* Court's expansive definition of "any other person" in Section 4-493(1) to deny the defendant club's motion for summary judgment. *See Hinebaugh*, 63 Pa. D. & C.4th at 146. As we explained above, however, in at least the civil context, the *Randall* Court's expansive definition of "any other person" cannot survive after our Supreme Court's opinion in *Manning*. Finally, our Supreme Court in *Manning* specifically declared that "[o]nly licensed persons engaged in the Sale of intoxicants have been held to be civilly liable to injured parties" and cautioned that expanding civil liability beyond this point is "a decision of [] monumental nature [that] is best left to the legislature." *Manning*, 310 A.2d at 76. We thus decline Appellant's invitation to expand Section 4-493(1)'s civil reach beyond the perimeters established by *Manning*.

Finally, Appellant claims that DFA otherwise breached its common law duty by providing alcohol to Williams when he was already intoxicated. *See* Appellant's Brief at 22-24.

In *Klein v. Raysinger*, 470 A.2d 507 (Pa. 1983), our Supreme Court held that, at common law, a social host is not liable for serving alcoholic beverages to a guest:

> in the case of an ordinary able bodied man it is the consumption of the alcohol, rather than the furnishing of the alcohol, which is the proximate cause of any subsequent occurrence. This is in accord with the recognized rule at common law. We agree with this common law view, and consequently hold that there can be no liability on the part of a social host who serves alcoholic beverages to his or her adult guests.

***Klein***, 470 A.2d at 510-511 (citations omitted).

According to Appellant, the common law rule expressed in ***Klein*** does not apply to this case, as Appellant averred in his complaint that DFA received remuneration for the alcohol that it provided to Williams. Appellant observes that, in ***Kapres v. Heller***, 640 A.2d 888 (Pa. 1994), our Supreme Court defined the "social host doctrine" as:

> a general phrase used to designate a claim in negligence against a person (the host) who provides alcoholic beverages to another (the guest), without remuneration, where the guest then sustains injuries, or causes injury to a third person as a result of his intoxicated condition. The theory is that the host should be liable for the injuries as he is the person who furnished the intoxicating beverages.

***Kapres***, 640 A.2d at 889 n.1.

Appellant claims that, under the above definition, "DFA cannot be considered a social host when it received remuneration in exchange for the provision or furnishing of alcohol." Appellant's Brief at 26. We disagree.

Within Appellant's complaint, Appellant specifically averred that, "[a]s a prerequisite and condition for participation in the [golf outing, DFA] required [its] employees to make a monetary contribution **to offset costs and expenses related to or associated with the [outing,]** including . . . those for greens fees, food and **alcohol**." Appellant's Complaint, 9/1/15, at ¶ 9 (emphasis added). According to Appellant, after Williams paid DFA the requisite monetary contribution, DFA purchased the greens fees, food, and alcohol for the outing. ***Id.*** at ¶ 10-11.

As the trial court correctly held, the averments in Appellant's complaint render this case akin to **Brandjord v. Hopper**, 688 A.2d 721 (Pa. Super. 1997), which dealt with the collective purchase of alcohol by a group. In **Brandjord**, defendant James Punch and his three friends collectively purchased and drank beer together. When Punch was driving his friends home, Punch struck the plaintiff with his van and caused the plaintiff to suffer serious injuries. **Id.** at 722.

The plaintiff sued Punch's three friends for negligence. The trial court granted the three defendants' motions for summary judgment and the plaintiff appealed to this Court. Among his claims on appeal, the plaintiff contended that the three defendants were not social hosts because they "shared with Punch in the purchase, transportation, and consumption of alcohol." **Id.** at 726. We rejected this claim and held:

> the principle enunciated in **Klein** . . is not limited merely to protect hosts of parties. Our [S]upreme [C]ourt stated in **Klein**, "in the case of an ordinary able bodied man it is the consumption of the alcohol, rather than the furnishing of the alcohol, which is the proximate cause of any subsequent occurrence." **Klein**, 470 A.2d at 510. Here, Punch chose to drink and chose to drive. These actions caused [plaintiff's] injuries.

**Id.**; **see also Commonwealth v. Peters**, 2 Pa.Super. 1 (Pa. Super. 1898) (where three individuals pooled money to purchase a bottle of whiskey, the actual purchaser of the whiskey could not be convicted of unlawfully "selling" the whiskey to the other two; the Court noted: "One of the three, to effectuate the common purpose, acting for himself and the others and at their request,

- 24 -

makes the purchase, pays the price and brings the article to a place appointed. The three, thereupon recognizing each other's rights in the thing purchased, jointly use it as their own. How can any one of the three be deemed the vendor of the others, or either of them?").

Under the concept of a collective purchase, as applied in **Brandjord** and **Peters**, the presence of remuneration will not defeat the rule adopted by our Supreme Court in **Klein**, which holds that the conduct of a social host who furnishes alcohol to an adult is not the proximate cause of a subsequent occurrence. Here, Appellant specifically averred that Williams paid DFA "to offset costs and expenses related to or associated with the [outing,] including . . . those for greens fees, food and alcohol." Appellant's Complaint, 9/1/15, at ¶ 9. DFA then utilized the collected money from all participants to pay for all participants' "greens fees, food and alcohol." **Id.** at ¶¶ 10-11. As the trial court ably explained, "[t]his type of collective fee does not qualify as remuneration and fails to place DFA in the position of being a licensee. Hence, DFA was a social host [and] . . . cannot be held liable for a claim of common law negligence as stated in **Klein**." Trial Court Opinion, 1/15/21, at 13.

We agree with the trial court's able conclusion. Thus, Appellant's final claim on appeal fails.

Order affirmed. Jurisdiction relinquished.

Judge Musmanno joins.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/17/2021</u>